**IN THE COURT OF APPEALS OF IOWA**

No. 18-1971
Filed March 20, 2019

**IN THE INTEREST OF O.B.,**
**Minor Child,**

**T.B., Mother,**
    Appellant,

**O.B., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Scott County, Christine Dalton Ploof, District Associate Judge.

A mother and father appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Patricia A. Rolfstad, Davenport, for appellant mother.

Brenda Drew-Peeples of Drew-Peeples Law Firm, Davenport, for appellant father.

Thomas J. Miller, Attorney General, and John McCormally (until withdrawal), and Anagha Dixit, Assistant Attorneys General, for appellee State.

Matthew D. Hatch of Hatch Law Firm, P.C., Bettendorf, guardian ad litem for minor child.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

A mother, Takenya, and a father, O.B. Sr., appeal the termination of their parental rights to their two-year-old son, O.B. Jr. Because the parents failed to challenge all the statutory grounds for termination, they have waived those issues on appeal. O.B. Sr. complains the Iowa Department of Human Services (DHS) did not timely complete a home study for his Illinois residence, but we find the DHS met its reasonable-efforts obligation. We also believe O.B.'s best interests are served by termination of the parents' rights. Accordingly, we affirm the juvenile court order.[1]

## I. Facts and Prior Proceedings

O.B. Jr. was removed from Takenya's care just shy of his first birthday because her uncontrolled schizophrenia made it impossible for her to care for him safely at that time.[2] Takenya repeatedly sought, but never successfully completed, mental-health treatment. Although the court directed her to an inpatient psychiatric program, Takenya absconded. She did not seriously undertake treatment until six months before trial. Then she participated in an intensive intervention called ACT

---

[1] We review the parents' claims de novo, which means we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). Although we are not bound by them, we give weight to the juvenile court's factual findings, especially as to witness credibility. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).
[2] The DHS workers described a series of dangerous events stemming from Takenya's unstable mental health: observers reported erratic, paranoid, and verbally aggressive behaviors; Takenya called 911 reporting O.B. Jr. was unresponsive, paramedics found he was only sleeping, but Takenya refused to believe them; Takenya left her son unsupervised for thirty minutes when he was eight months old (resulting in a founded child abuse assessment for failure to provide proper supervision); she fed him age-inappropriate table food, causing him to choke; she shook him out of frustration with his crying; while in the hospital with her eight-month-old son, Takenya refused to hold or feed him; and Takenya believed people were "whispering" in her son's ears, trying to talk to him without her knowledge.

(Assertive Community Treatment) involving a team of professionals including a substance abuse counselor, a social worker, a nurse, and a community worker, who tried to coordinate services and ensure she continued her medication and therapy. Nonetheless, the caseworkers reported Takenya did not accept services beyond medication management and transportation. At the time of the termination hearing, Takenya's mental health remained unstable, and she demonstrated little insight into how to address her psychiatric needs.

When O.B. Jr. was removed from Takenya's care, O.B. Sr. was homeless and unable to take custody. O.B. Sr. has a history of substance abuse but denies any problem. He did not undergo a substance-abuse evaluation or submit to drug testing as requested. O.B. Sr. told a mental-health evaluator he did not use illegal substances, and when the DHS caseworker asked O.B. Sr. about the truthfulness of those statements, O.B. Sr. insisted "marijuana is not a drug and it is not illegal." The DHS case worker also confronted O.B. Sr. about a video posted online that appeared to show him smoking marijuana and "rapping a song" with derogatory lyrics, including "if someone F-ing messes with my child, I will F-ing mess with you." O.B. Sr. denied both the marijuana use and the threats. He said he was "just venting, like clearing my mind."

O.B. Sr. did not move into stable housing until several months after the child's placement in foster care. O.B. Sr.'s residence was in East Moline, Illinois.[3]

---

[3] Because the father lived outside of the state, the Iowa DHS asked its Illinois counterpart to perform a home study under the Interstate Compact on the Placement of Children (ICPC). The Iowa worker transmitted that request in June 2018. The results were not available at the time of the September 2018 termination hearing.

O.B. Sr. attended only half of the offered visitations with O.B. Jr. But when O.B. Sr. did show up, he understood his child's needs; and according to the caseworkers, father and son displayed a strong bond.

Following the State's petition and a hearing, the juvenile court terminated the parents' rights. The court terminated the mother's rights under Iowa Code section 232.116(1), paragraphs (d), (h), and (k) (2018). The court terminated the father's rights under paragraphs (d), (e), and (h). Both parents appeal.

## II.     Statutory Grounds

The State must prove by clear and convincing evidence at least one statutory ground authorizing the termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018). "When the juvenile court terminates parental rights on more than one statutory ground, we need only find grounds to terminate under one of the sections cited by the juvenile court to affirm." *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). Failure to challenge a particular ground constitutes waiver of that claim. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010); *Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal.").

The juvenile court terminated the mother's parental rights under paragraphs (d),[4] (h),[5] and (k).[6] In her petition on appeal, Takenya focuses on the

---

[4] Under this section, termination of parental rights is appropriate if, despite the receipt of services, the circumstances leading to the adjudication continue to exist. Iowa Code § 232.116(1)(d).

[5] Under this section, termination is appropriate if: the child is three years of age or younger; has been adjudicated in need of assistance; has been removed from parents for six consecutive months; and cannot be returned to the parent at the present time for fear of further adjudicatory harm. Iowa Code § 232.116(1)(h).

[6] Under this section, termination is appropriate if: the child has been adjudicated in need of assistance; the parent has a chronic mental illness; and the parent's prognosis indicates

elements of paragraph (k). She asserts the State did not show by clear and convincing evidence O.B. Jr. could not be returned to her care within a reasonable time. She does not mention paragraph (d), and so, has waived her challenge to termination on that ground. She makes passing reference to paragraph (h), but that is insufficient for our review. *See Midwest Auto. III, LLC v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 431 n.2 (Iowa 2002) (finding perfunctory mention of an issue without elaboration or supporting authority waives the claim). Because Takenya has waived a challenge under paragraphs (d) and (h), we affirm the termination of her parental rights.

O.B. Sr. also focuses on the elements of paragraph (k). But the juvenile court terminated his rights under paragraphs (d), (e),[7] and (h), not paragraph (k). And while O.B. Sr. mentions paragraph (h), he does not contest paragraphs (d) or (e); so we deem those challenges waived.

O.B. Sr. next challenges the reasonable efforts of the DHS—he asserts the agency did not complete its home study of his Illinois residence in time for the termination hearing. The DHS "has an obligation to make reasonable efforts toward reunification." *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005). A parent has "an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing." *Id.* "[W]hat constitutes reasonable services varies based upon the requirements of each individual case." *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002).

_____

the child cannot return to parental custody within a reasonable period of time. Iowa Code § 232.116(1)(k).

[7] Under this section, termination of parental rights is appropriate if the parent has failed to maintain significant and meaningful contact. Iowa Code § 232.116(1)(e).

Assuming O.B. Sr. preserved his reasonable-efforts argument, we do not find the delay in the ICPC home study undermines the State's overall proof of the termination grounds. When the elements of termination require reasonable efforts, the scope of the services offered by the DHS after removal "impacts the burden of proving those elements." *In re L.T.*, ___ N.W.2d ___, ___, 2019 WL 982910, at *5 (Iowa 2019) (analyzing reasonable efforts under paragraphs (f)–(h)). The State established O.B. Sr. did not secure independent housing until several months before the termination hearing. O.B. Sr. avoided substance abuse evaluation and testing. The DHS offered regular visitation, but O.B. Sr. missed eighteen opportunities to interact with his son. Under these circumstances, we conclude the DHS efforts were reasonable.

## III.    Best Interests

The parents next challenge the juvenile court's conclusion termination is in O.B.'s best interests.

> In considering whether to terminate the rights of a parent . . . , the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.

Iowa Code § 232.116(2). We reach the same conclusion as the juvenile court: it is in O.B. Jr.'s best interests to terminate parental rights. He has been out of the mother's care for more than one year—about half his life. Takenya was unable to achieve stability in her mental health. O.B. Sr. has never had custody of O.B. and has not made a meaningful effort to address his substance abuse or to regularly attend visitation. O.B. Jr. bonded with his foster family and they are open to

adoption.  Termination of parental rights furthers O.B. Jr.'s need for safety and both short- and long-term nurturing and growth.

**AFFIRMED ON BOTH APPEALS.**